IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY M. SPRING, SR., | ) | Case No. 4:18-cv-2920 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| BRANDESHAWN HARRIS, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION**[2] |

On December 30, 2014, Jeffrey Spring, Sr., shot and killed Stephen Boyer.  Spring gave

varying accounts what happened, including that he fired shots through his front door not

knowing Boyer was on the other side and then shot Boyer in the head to end his suffering.  A

Jefferson County, Ohio, jury found Spring guilty of murder with a firearm specification and

tampering with evidence.  And Spring was sentenced to 18 years to life imprisonment.

On December 19, 2018, Spring filed an incomplete, pro se petition for writ of habeas

corpus under 28 U.S.C. § 2254 (ECF Doc. 1), raising two grounds for relief:

> **Ground One:** Trial counsel was ineffective for failing to: (1) file a pretrial
> motion to suppress Spring's statements to police; (2) object to prosecutorial
> misconduct during closing argument; and (3) object to witness opinion testimony
> (ECF Doc. 1 at 5); and

> **Ground Two:** Appellate counsel was ineffective for not raising trial counsel's
> failure to investigate pills found by Boyer's body (ECF Doc. 1 at 7).

---

[1] Since this action began, Spring was transferred to Belmont Correctional Institution, where David Gray is
warden. *Rumsfeld v. Padilla*, 542 U.S. 426, 435-36 (2004) (stating that the proper respondent in a habeas
action "is the warden of the facility where the [petitioner] is being held").
[2] This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a
report & recommendation pursuant to Local Rule 72.1.

On December 20, 2018, Spring filed a supplement with the remaining pages of his petition, which did not assert any additional grounds for relief.  ECF Doc. 3.  Warden Gray filed a return of writ on March 26, 2019.  ECF Doc. 8.

On September 19, 2019, I granted Spring leave to amend his § 2254 petition to add to his Ground Two claim that appellate counsel also was ineffective for not raising trial counsel's failure to forensically test the bullets recovered from the crime scene for metal, paint, or primer residue.  ECF Doc. 11; ECF Doc. 13.  The amended § 2254 petition was due on January 26, 2021, which came and went without an amended petition having been filed.  ECF Doc. 17.  On May 24, 2021, Spring filed his traverse, raising a new, Ground Three claim of ineffective assistance of trial counsel for counsel's failure to investigate his front door, the bullets, and the pills.  ECF Doc. 25.  On June 1, 2021, Spring filed what appears to be a duplicate copy of his § 2254 petition, only consolidated into a single document.  ECF Doc. 26.  On June 8, 2021, Warden Gray filed a surreply to Spring's traverse.  ECF Doc. 27.

Because all of Spring's claims are non-cognizable, procedurally defaulted, and/or meritless, I recommend that all of Spring's claims be DISMISSED and that his petition for writ of habeas corpus be DENIED.  I further recommend that Spring not be granted a certificate of appealability.

## I.      State Court Proceedings

### A.      Trial Court

On January 7, 2015, Spring was charged with one count of murder with a firearm specification and one count of tampering with evidence, to which Spring pleaded not guilty. ECF Doc. 8-1 at 4-7.  A jury trial was held on July 28, 2015.  ECF Doc. 9 at 3, 170.  The facts established by the evidence, as determined by the Ohio Court of Appeals, are as follows:

> {¶2}  Spring called 911 to report that he had killed Stephen Boyer; he had sustained two gunshot wounds and his body was found outside of Spring's home.

… Spring made numerous inconsistent statements to police about the circumstances surrounding Boyer's death, regarding which defense counsel did not file a motion to suppress.

{¶3}  … Both Spring and [Boyer] had been drinking alcohol on the day Boyer was killed; Spring estimated that he had consumed fifteen beers and Boyer's blood alcohol content upon his autopsy was .292.  On the 911 call, Spring claimed Boyer was trying to break into his home while brandishing a knife and seemed to indicate that there was more than one person in his home when this attempted break-in occurred.

{¶4}  When police arrived, they found Spring was the only one in the home.  There was no sign of forced entry at his residence and no sign of a struggle inside of his home.  Police located the [Boyer's] jacket and … cell phone in Spring's living room.

{¶5}  They found Boyer dead, having sustained gunshot wounds to the head and chest.  His body was laying in front of Spring's front door; however, there was a bloodstain several feet away—not near the front of the door—that appeared to have been swept up with a broom.  A bloodstained push-broom was also found outside.

{¶6}  Officers placed Spring in the back seat of a cruiser and questioned him.  After being provided with *Miranda* warnings, Spring stated:  "I shot him once, went outside and shot him again in the head to make sure he was dead."

{¶7}  Officers observed [Boyer] had a knife in his hand, but they also noticed that the placement of the knife seemed odd given the condition of the body and the gunshot wound suffered by [Boyer].  The knife was recovered and sent to the BCI crime lab for processing.  The only DNA recovered from the handle and the blade of the knife belonged to Spring; there was no DNA from [Boyer] on that knife.

{¶8}  Officers attempted to find the firearm used in the crime, a Smith and Wesson .38 revolver, and Spring made various claims as to where the weapon might be, first claiming it was in his bedroom, and later stating that it might have been in the couch.  Officers later located the weapon during a search of the residence, inside of a concealed cabinet in the kitchen.  The gun contained two spent shell casings and four live rounds.

{¶9}  An autopsy of [Boyer's] body resulted in a bullet being recovered from [Boyer's] abdomen.  That bullet was a .38 caliber bullet and additional testing by the crime lab resulted in the conclusion that the bullet found inside Boyer's body was fired from the .38 Smith and Wesson revolver found in Spring's kitchen.

{¶10}  Approximately ten hours after he made the 911 call, Spring was interviewed by Sheriff Fred Abdalla while in sheriff's department custody; this interview was videotaped.  Before questioning Spring, Abdalla provided him the

*Miranda* warnings, and Spring indicated he understood his rights and wished to waive them.

{¶11}  Spring admitted to the sheriff that he first shot [Boyer] in the abdomen and then shot him again in the head.  He explained he inflicted the second shot because he did not want to see [Boyer] suffer.  This statement by Spring matched the conclusions of the medical examiner, who indicated that [Boyer] was alive when the shot to the head was fired.  Spring also admitted he attempted to clean up the blood outside with a broom, and that he placed the knife in [Boyer's] hand after he shot him.

{¶12}  Spring elected to testify in his own defense at trial, claiming that he shot [Boyer] accidentally through his closed front door.  Spring testified that he believed [Boyer] had left the premises, and therefore did not think he would hit anyone when he fired his weapon through the door.  Spring claimed that prior to the shooting there were only seven bullet holes in the front door, an assertion supported by the testimony of his son.  After the shooting, investigators found there were nine bullet holes in the front door.

{¶13}  Spring admitted he lied when he reported [Boyer] broke into his house and had a knife.  Spring said he and [Boyer] had been together at his home for approximately 30 to 40 minutes, when the two began to argue.  At some point, he became agitated after observing his prescription medication bottles were moved; he suspected [Boyer] had attempted to steal from him.  He then pushed [Boyer] out of his house.  Subsequently, he shot two times through the closed front door.

{¶14}  Spring said he discovered [Boyer's] dead body outside when his dogs began to bark.  Spring conceded he took the broom and was trying to sweep away the blood stains and that he also "got some disinfectant and sprayed it around" that area.  Only after his attempt at cleaning up, did Spring call 911.  As for the knife, Spring said he "subconsciously" planted it in [Boyer's] hand.  When asked by defense counsel whether he lied about the knife because he was afraid, Spring remarked: "I wasn't.  I wasn't afraid."

{¶15}  Upon cross-examination, Spring could not explain how the bullets would have taken a 90 degree turn once going through the door, to hit [Boyer] where the bloodstain was found outside.  Spring asserted that three separate law enforcement officers must have misheard him when they reported he said he shot Boyer once and then went out and shot him again in the head to make sure that he was dead.  Spring was unable to explain his recorded statement to the sheriff, wherein he admitted that he shot [Boyer] in the head because he "didn't want to see him suffer."

ECF Doc. 8-1 at 59-61.[3]  During the course of trial, Sheriff Abdalla also gave an opinion of where on Spring's properly he believed Boyer was shot, and Special Agent Edward Lulla opined on the difference between blood drip and blood spatter.  ECF Doc. 9 at 158, 182.  During closing argument, in rebuttal, the state referred to Spring as a "snake" and stated that Spring could have, but did not, call witnesses to testify about pills found near Boyer's corpse.  ECF Doc. 9 at 316-17.  The jury convicted Spring as charged, and Spring was sentenced to an aggregate 18-year to life term of imprisonment.  ECF Doc. 8-1 at 8-9; ECF Doc. 9 at 332.

### B. Direct Appeal

On September 8, 2015, Spring appealed his convictions to the Ohio Court of Appeals. ECF Doc. 8-1 at 12.  Through new counsel, Spring filed a merits brief, asserting one assignment of error which contained three issues:

> Jeffery Spring received ineffective assistance of counsel because his attorney failed to [(1)] file a motion to suppress his statements to the police, when he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights; [(2)] object to prosecutorial misconduct in closing argument; and [(3)] object to witness opinion which was not based on firsthand knowledge or expertise.

ECF Doc. 8-1 at 19, 23.  He additionally raised a cumulative-error claim based on trial counsel's alleged deficiencies.  *Id.*  First, Spring argued that counsel should have moved to suppress his custodial statements to police given the evidence of (i) his alcohol use, (ii) his tenth grade education, (iii) the lack of inquiry into his mental state by police prior to questioning, and (iv) his prescription medication.  ECF Doc. 8-1 at 27-30.

Second, Spring argued that trial counsel should have objected to the prosecution's statements in rebuttal closing argument calling Spring a "snake" because they were sufficiently

---

[3] These state court factual findings are presumed correct unless Spring rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 801 (6th Cir. 2013).

inflammatory to qualify as prosecutorial misconduct.  ECF Doc. 8-1 at 30-31.  And counsel should have objected to the prosecution's comment that Spring could have called witness to testify about the pills because it implicitly shifted the burden of proof on Spring.  ECF Doc. 8-1 at 31.  Third, Spring contended that counsel should have objected to: (i) Sheriff Abdalla's testimony about where he believed Boyer was shot because it was based on unfounded assumptions; and (ii) Special Agent Lulla's testimony regarding blood-stain patterns because he was not qualified as an expert.  ECF Doc. 8-1 at 31-33.

The state filed an appellee brief.  ECF Doc. 8-1 at 42-57.  On March 3, 2017, the Ohio Court of Appeals determined that Spring's assignment of error was meritless and affirmed his convictions.  ECF Doc. 8-1 at 58-75; *State v. Spring*, 85 N.E.3d 1080 (Ohio App. Ct. 2017).  On Spring's first issue, the court determined that, despite the testimony that Spring had an odor of alcohol, slurred speech, and consumed 15 beers on the day of the shooting, a motion to suppress would not have been successful and counsel was not constitutionally deficient for not filing a meritless motion.  ECF Doc. 8-1 at 65-66.  The court reasoned that, as to Spring's statements shortly after his arrest:

> [W]e have the benefit of the 911 call audio recording as part of the record, which Spring made shortly before those officers arrived.  On the call, although Spring's speech does sound slurred, Spring was coherent and calm and was able to correctly report his name, address, phone number and the victim's name.  The officers indicated that Spring was calm and appeared to understand the questions asked of him.

ECF Doc. 8-1 at 65.  As to Spring's statements to Sheriff Abdalla, the court reasoned:

> … The interview was videotaped and is part of the record.  Spring appears coherent and mostly calm.  He was not slurring his speech, and did not appear intoxicated.  He was even able to correct Abdalla about the number of times he had been Mirandized.  Abdalla stated that he was about to read him his rights for the third time, when Spring correctly noted that actually it was only the second time he had been Mirandized since being placed in custody for the homicide.  Abdalla went through each of the Miranda rights and gave Spring the opportunity to ask questions about each.  Spring indicated he understood the rights he would waive by making a statement.  Further, Abdalla testified that Spring never

6

claimed to need medication during the interview and denied that Spring appeared
to be suffering from any type of memory loss or confusion.

ECF Doc. 8-1 at 66.

On Spring's second issue, the Ohio Court of Appeals determined that the prosecution's

remarks during closing argument were not improper.  ECF Doc. 8-1 at 66-69.  Specifically, the

court stated:

> {¶38}  Spring first asserts that trial counsel was ineffective for failing to object to
> the prosecutor's comment during her rebuttal closing that Spring was a "snake."
> * * *
>
> {¶39}  However, as Spring concedes, defense counsel had just characterized
> [Boyer] as a snake, during an anecdote in his own closing. * * *
>
> {¶40}  When reviewed in the context of the entire closing statements of both
> parties, the comment calling Spring a snake does not rise to the level of
> misconduct; it was a reasonable rebuttal to defense counsel's closing statement.
>
> {¶41}  Second, Spring asserts it was improper for the State, during its rebuttal
> closing to point out to the jury that both sides may call witnesses.  Again, the
> prosecutor was merely responding to statements made by defense counsel in his
> closing about how they were unanswered questions about white pills found next
> to [Boyer's] body.

ECF Doc. 8-1 at 67-69.  Alternatively, the court concluded that Spring could not establish he was

prejudiced by the prosecutor's remarks in light of the "overwhelming" evidence against him.

ECF Doc. 8-1 at 69.

On Spring's third issue, the Ohio Court of Appeals determined that Sheriff Abdalla's

testimony was not improper because it was rationally based on his observation and perception of

the scene of the crime and was helpful for the determination of a fact in issue.  ECF Doc. 8-1 at

70.  The court also determined that (1) Special Agent Lulla likely would have been deemed an

expert had the state so requested, because Special Agent Lulla testified that he was assigned to

Bureau of Criminal Investigation's ("BCI") crime scene unit, processed crime scenes for local

agencies, and had worked for BCI for 18 years and in law enforcement for 13 years before that;

(2) Special Agent Lulla's report was admitted into evidence and the pictures contained therein clearly depicted areas that appeared to be blood drips versus splatter; and (3) there was Ohio precedent allowing admission of testimony similar to that of Special Agent Lulla's even without expert qualification.  ECF Doc. 8-1 at 70-72.  Alternatively, the court concluded that any failure to object was not prejudicial given the overwhelming evidence of guilt.  ECF Doc. 8-1 at 70, 72. The court's decision was journalized on March 6, 2017.  ECF Doc. 8-1 at 58, 74-75.

On April 17, 2017, Spring appealed to the Ohio Supreme Court.  ECF Doc. 8-1 at 76-77. His memorandum in support of jurisdiction asserted one proposition of law: "Is an Appellant Deprived of Due Process under Law under the Ohio and U.S. Constitutions when He Does Not Receive the Effective Assistance of Counsel?"  ECF Doc. 8-1 at 79.  Spring's arguments in support of his proposition of law largely mirrored those he made in the court of appeals.  ECF Doc. 8-1 at 80-88.  On July 26, 2017, the Ohio Supreme Court declined to exercise jurisdiction. ECF Doc. 8-1 at 106.

### C.     App. R. 26(B) Application to Reopen Appeal

On June 6, 2017, Spring filed a *pro se* application to reopen his direct appeal pursuant to Ohio App. R. 26(B), alleging that appellate counsel was ineffective for not arguing that trial counsel was ineffective for failing to test pills found by Boyer's body, which would have shown that Boyer had stolen his pills and that a lesser-included offense instruction was warranted.  ECF Doc. 8-1 at 128; *see* Docket for Ohio App. Ct., 7th Dist. Case No. 15JE19.

On June 29, 2017, the Ohio Court of Appeals denied Spring's application to reopen as untimely because Spring did not file the application within the 90-day period set forth under Ohio App. R. 26(B)(1) and failed to show cause for the untimely filing.  ECF Doc. 8-1 at 108-10. The court further determined that the motion was due to be denied because Spring failed to provide – as required under Ohio App. R. 26(B)(2)(e) – portions of the record upon which he

relied and cited in his application.  ECF Doc. 8-1 at 109.  Accordingly, the court determined, "we need not reach the merits of his arguments."  *Id.*

On July 10, 2017, Spring applied, pursuant to Ohio App. R. 26(A), for reconsideration. ECF Doc. 8-1 at 111.  He asserted that he had deposited his Rule 26(B) application for mailing on June 1, 2017, but it was not filed until June 6, 2017.  *Id.*  There was no reasonable explanation, Spring argued, for why it took five days for the motion to be filed and he should not be penalized for a delay over which he had no control.  *Id.*  Spring further contended that the failure to support his Rule 26(B) with records was an improper basis for denying the application because he had explained that counsel did not provide him a copy of the transcripts.  ECF Doc. 8-1 at 111-12.

On September 29, 2017, the Ohio Court of Appeals denied Spring's Rule 26(A) application for reconsideration because he could not argue points to show good cause that he could have raised earlier in the proceedings.  ECF Doc. 8-1 at 113, 114.  The court further stated that, although counsel may not have provided him transcripts, Spring had made no other attempt to obtain the transcripts.  ECF Doc. 8-1 at 114-15.

Spring filed a pro se notice of appeal to the Ohio Supreme Court.  ECF Doc. 8-1 at 117-18.  His memorandum in support of jurisdiction asserted one proposition of law:

> Is an Appellant Denied Due Process when His Application for Reopening pursuant to App.R. 26(b) is Denied on Purely Procedural Grounds which [*sic.*] Arguably Unrelated to Appellant's Duty to [*sic.*] Diligence?

ECF Doc. 8-1 at 120.  In support, he largely reiterated his arguments in support of reconsideration and restated his grounds for Rule 26(B) relief.  ECF Doc. 8-1 at 121-29.  On February 14, 2018, the Ohio Supreme Court declined to accept jurisdiction.  ECF Doc. 8-1 at 137.

9

### D.      Petitions for Post-Conviction Relief

Meanwhile, on September 28, 2016, Spring filed his **first** pro se petition for post-conviction relief.  ECF Doc. 8-1 at 138-42.  Spring raised two related claims for relief:

> 1.  Trial counsel was ineffective when counsel failed to investigate Spring's front door and bullets recovered from the door and Boyer's body.  ECF Doc. 8-1 at 139.

> 2.  Spring's right to a fair trial was violated when bullets recovered from the front door and Boyer's body were not presented at trial.  ECF Doc. 8-1 at 140-41.

In support, Spring argued that had the bullets had been forensically analyzed, they would have revealed paint or metal fragments from the door of his home and supported his claim that he shot through the front door without knowledge that Boyer was on the other side.  ECF Doc. 8-1 at 139-41.  Spring further argued that a test for gunshot residue was not performed on Boyer or the door.  ECF Doc. 8-1 at 141.  If Boyer had been shot in the head, gunshot residue would be present on Boyer or his clothing, whereas gunshot residue would be found on the door if – as Spring claimed – he had shot Boyer through the door.  *Id.*

In a supporting affidavit, Spring stated that Boyer came to his house on the night of the offense.  ECF Doc. 8-1 at 146.  He and Boyer had both been drinking.  *Id.*  Spring had also taken hydrocodone, oxycodone, Valium, and Zanaflex.  *Id.*  Spring went outside to use the bathroom, after which he returned inside and found Boyer going through his medication.  *Id.*  Spring made Boyer leave, locked the door, and went to his room and got his gun because he was angry.  *Id.*  Spring went to the front door and shot twice at the door, which he had done on several prior occasions – as evidenced by the many bullet holes on the door.  *Id.*  He did not know Boyer was on the other side nor did he intend to shoot Boyer.  *Id.*  Forensic evaluation of the bullets recovered in his case would show paint/metal fragments from the front door to confirm his statements.  *Id.*  The state filed a response opposing the petition.  ECF Doc. 8-1 at 148-49.

On June 1, 2018 – while Spring's first petition was still pending – Spring filed a **second** pro se petition for post-conviction relief.  ECF Doc. 8-1 at 150-52.  In it, he raised one claim: trial counsel was ineffective for not investigating narcotics that had been stolen from him and found near Boyer's body.  ECF Doc. 8-1 at 151, 154.  Spring attached a supporting affidavit, identical to his previous one except he additionally stated that a forensic evaluation of the pills recovered in his case would show that Boyer stole them from his bedroom.  ECF Doc. 8-1 at 157.  Spring also moved for forensic testing of the bullets recovered from the scene.  ECF Doc. 8-1 at 145.

On December 4, 2018, Spring filed a **third** pro se petition for post-conviction relief, reiterating that trial counsel was ineffective for not submitting the front door of his house or the drugs found by Boyer to be tested.  ECF Doc. 8-1 at 186-88.  On March 12, 2019, Spring filed a **fourth** pro se petition for post-conviction relief, asserting – as relevant here – that (1) trial counsel was ineffective for not objecting to Sheriff Abdalla's and Special Agent Lulla's testimony and to the prosecution's statements during closing argument; and (2) appellate counsel was ineffective for not raising trial counsel's failure to test the door and pills and bullets recovered from the scene of the offense.  ECF Doc. 8-1 at 192-95.

On March 19, 2019, the trial court scheduled a hearing on Spring's petitions for April 1, 2019.  ECF Doc. 8-1 at 207.  At the hearing, David Brundage, MS, was authorized to forensically analyze the bullets.  ECF Doc. 24 at 24.

On June 4, 2019, Brundage rendered his report, noting that he was told there was only one bullet in the record.  ECF Doc. 24 at 24, 26.  His examination revealed that the bullet he was provided exhibited a grey paint-like material that could be removed and compared with the paint from Spring's grey front door.  ECF Doc. 24 at 25-26.  Brundage did not compare the paints because he had not been trained to do so.  ECF Doc. 24 at 26.

On July 10 and 18, 2019, Spring filed his **fifth** and **sixth** pro se petitions for post-conviction relief.  ECF Doc. 24 at 4-7, 20-23.  Both petitions asserted that (1) trial counsel was ineffective for not forensically testing the bullet recovered from the scene of the offense and the front door of his house, and (2) Spring was denied a fair trial by said forensic evidence not being presented at trial – as evidenced by Brundage's report.  ECF Doc. 24 at 5-6, 21-22.

On July 11, 2019, the trial court ordered that "Any motions filed on or before July 10, 2019 are overruled without a hearing."  ECF Doc. 24 at 19.  On August 1, 2019, Spring filed a notice of appeal.  ECF Doc. 24 at 49.  On August 6, 2019, the trial court summarily denied Spring's July 18, 2019 petition.  ECF Doc. 24 at 48.

Spring filed a merits brief in the Ohio Court of Appeals, asserting four assignments of error on claims of trial court error.  ECF Doc. 24 at 64.  Specifically, that the trial court erred and denied Spring due process of law by denying his petition for post-conviction relief when he presented evidence that (1, 2, and 3) trial counsel was ineffective for not investigating evidence related to (i) his front door, (ii) bullets found at the scene of the crime, and (iii) pills found at the scene of the crime; and (4) he was denied a fair trial due to counsel's failure to investigate the bullets.  ECF Doc. 24 at 69-80.  Spring's supporting arguments reiterated the merits of his claims of ineffective assistance of trial counsel in his several petitions for post-conviction relief.  ECF Doc. 24 at 69-75.

On September 28, 2020, the Ohio Court of Appeals overruled Spring's assignments of error and affirmed the trial court's decisions.  ECF Doc. 24 at 83-89; *State v. Spring*, 2020-Ohio-4718 (Ohio App. Ct. Sept. 29, 2020).  The court reasoned:

> [T]he arguments raised by [Spring] could have, or should have been raised on direct appeal.  In fact, [Spring's] entire argument on direct appeal focused on his claim of multiple alleged instances of ineffective assistance of counsel; however, it did not refer to the evidentiary issues he now raises. … Nonetheless, [Spring] could have additionally raised the issues he now raises surrounding his counsel's alleged failure to properly investigate during his direct appeal.

{¶19}  As [Spring] points out in his brief, his trial counsel was in possession of the door to [Spring's] house, which contained bullet holes that [Spring] asserts should have been forensically examined.  Additionally, [Spring] testified at trial that his prescription medication bottles had been moved and he suspected [Spring] had attempted to steal from him.  … And there was considerable amount of testimony at trial regarding the bullets that killed Boyer.  … Thus, at the time of his direct appeal, [Spring] was aware of the issues he raised in postconviction.  He could have, and should have, raised the issues in his direct appeal.  Therefore, the trial court properly denied [Spring's] postconviction petitions as the issues he raised were barred by the doctrine of res judicata.

ECF Doc. 24 at 87.

Spring has not shown that he properly pursued any further review before the Ohio Supreme Court.

## II.    Discussion

### A.    Ground One: Ineffective Assistance of Trial Counsel

#### 1.    Parties' Arguments

In his Ground One claim, Spring asserts that he received ineffective assistance from his trial counsel, in violation of his Sixth and Fourteenth Amendments.  ECF Doc. 1 at 5. Specifically, the claim was based on counsel's failure to: (1) file a pretrial motion to suppress statements he made in violation of his *Miranda* rights; (2) object to prosecutorial misconduct in closing argument; and (3) object to testimony that was not based on first-hand knowledge of expertise.  *Id.*

Warden Gray responds that Spring is not entitled to relief on his Ground One claim because the Ohio Court of Appeals reasonably determined that he could not show deficient performance or prejudice.  ECF Doc. 8 at 33.  Spring has not further developed his Ground One claim in his traverse.  *See generally* ECF Doc. 25.

### 2.      AEDPA Deference

To obtain a writ of habeas corpus, Spring has the burden to prove that he is "in custody in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2554(a). Because the Ohio Court of Appeals addressed Spring's ineffective-assistance-of-trial counsel claim on the merits, Spring's Ground One claim is subject to the deferential reasonableness standard under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 124 ("AEDPA"). *Johnson v. Williams*, 568 U.S. 289, 292 (2013). Under AEDPA, habeas relief is available only when the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d). The relevant question isn't whether the state court got it right or wrong, but whether the state court's determination was "unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The petitioner must show that the state court's "decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### 3.      Ineffective Assistance Standard

Criminal defendants have a Sixth and Fourteenth Amendment right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To obtain relief on an ineffective-assistance claim, the petitioner must show that: (1) trial counsel's action or inaction was objectively unreasonable in light of all the circumstances of the case; and (2) "the deficient performance prejudiced the defense." *Id.* at 687-88. To meet the first *Strickland* prong, the petitioner has to overcome the presumption that trial counsel exercised reasonable

professional judgment in light of the circumstances that counsel faced when making all significant decisions.  466 U.S. at 690.  And for "prejudice," the petitioner has to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The already deferential *Strickland* standard becomes even more difficult to meet when combined with the highly deferential AEDPA standard.  *Harrington*, 562 U.S. at 105.  The question becomes "not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id.*

### 4.    Motion to Suppress *Miranda*-Defective Statements

#### a.    Law

In *Miranda*, the Supreme Court held that – under the Fifth Amendment – a person taken into custody or otherwise deprived of their freedom must be advised of certain rights prior to any questioning.  *Miranda v. Arizona*, 384 U.S. 436, 444, 471-78 (1966).  Statements obtained without prior rights warnings and a valid waiver cannot be used against the declarant in a criminal trial.  *Id.* at 479.  Whether a suspect's waiver of *Miranda* rights is knowing and voluntary depends on the totality of the circumstances surrounding the interrogation.  *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).  "The Supreme Court has never said that impairments from drugs, alcohol, or other similar substances can negatively impact a suspect's waiver of his *Miranda* rights."  *Treesh v. Bagley*, 612 F.3d 424, 434 (6th Cir. 2010) (quotation marks and alterations omitted).  And under Ohio law, "[t]he presence of alcohol will not, by itself, make a statement *per se* inadmissible."  *State v. Stewart*, 598 N.E.2d 1275, 1279 (Ohio App. Ct. 1991) (quotation marks omitted).  The relevant question is whether the amount of drugs or alcohol consumed was sufficient to impair the defendant's ability to reason.  *Id.*

b.    **Analysis**

The Ohio Court of Appeals' denial of Spring's Ground One claim – as to his first ineffective-assistance argument – was neither contrary nor an unreasonable application of *Strickland*.  28 U.S.C. § 2254(d).  The court explicitly cited and applied the two-prong deficiency and prejudice *Strickland* standard.  ECF Doc. 8-1 at 62.  And the court reasonably concluded that Spring failed to establish deficient performance on account of counsel's failure to move to suppress his statements to law enforcement.  ECF Doc. 8-1 at 65-66.

The Ohio Court of Appeals stated that a motion to suppress Spring's statements to police officers at the scene of the offense likely would not have succeeded because – despite evidence that Spring had consumed up to 13 beers that day, had slurred speech, and had been taking prescription medication – Spring was observed to be, and sounded in his 911 call, calm and coherent and accurately relayed information.  ECF Doc. 8-1 at 66.  Fair-minded jurists could disagree on the correctness of the state court's determination that a motion to suppress would have been meritless, given: (1) the 911 recording, showing Spring was calm, coherent, and able to accurately convey information; (2) Sergeant Matt Henderson's testimony that Spring was calm and complied with instructions when he arrived at the scene; (3) Sergeant Sean Rath's and Sergeant Terry Grindle's testimony that Spring was calm; (4) Sergeant Joseph Lamantia's testimony that he witnessed firsthand Spring being given *Miranda* warnings at the scene of the offense, Spring was calm and listening, Spring did not appear unable to answer questions, and Spring seemed like he understood; and (5) Sheriff Abdalla's testimony that Spring appeared to be able to understand questions and accurately remembered the number of times he had been *Mirandized*.  *Harrington*, 562 U.S. at 102-03; ECF Doc. 8-1 at 66; ECF Doc. 9 at 106-07, 115, 121, 124, 133-34, 158, 162.

Fair-minded jurists could likewise disagree on the correctness of the Ohio Court of Appeals' determination that a motion to suppress also would have been meritless as to Spring's statements while being interviewed at the jail.  *See Harrington*, 562 U.S. at 102-03.  This is especially so, given: (1) Sheriff Abdalla's testimony that (i) Spring was questioned ten hours after being brought to the jail, (ii) Spring never mentioned needing, or suffering from not having his medication, (iii) Spring corrected Sheriff Abdalla on the number of times he had been provided *Miranda* instructions, and (iv) Spring did not appear to suffer from confusion or memory loss; and (2) Spring's recorded interview with Sheriff Abdalla, during which Spring was coherent, did not slur or appear intoxicated, and indicated that he understood his rights.  ECF Doc. 8-1 at 66; ECF Doc. 9 at 159, 160-62.  From the evidence, the state court reasonably could conclude that Spring's alcohol and/or medication consumption did not render his waiver of his *Miranda* rights unknowing or involuntary.  *See Stewart*, 598 N.E.2d at 1279.  Therefore, the state court's conclusion that counsel was not deficient because a motion to suppress Spring's statements would have been denied was not so lacking in justification that it was beyond any possibility for fair-minded disagreement.  *Harrington*, 562 U.S. at 102-03; *see Walker v. Chapman*, No. 20-1485, 2020 U.S. App. LEXIS 32093, at *8 (6th Cir. Oct. 8, 2020) (unreported) ("Counsel is not ineffective for failing to pursue a meritless motion or issue.").

### 5. Prosecutorial Misconduct

The Ohio Court of Appeals' denial of Spring's Ground One claim – as to his second ineffective-assistance argument – also was neither contrary nor an unreasonable application of *Strickland*.  28 U.S.C. § 2254(d).  Applying the *Strickland* standard, the Ohio Court of Appeals reasonably determined that Spring suffered no prejudice on account of trial counsel's failure to object to the prosecutor's remarks during rebuttal closing argument.  Taking each challenged remark in turn, the state court could reasonably conclude that the state's reference to Spring as a

"snake" was not improper.  Fair-minded jurists could disagree on the correctness of that determination, given that the state made that remark in rebuttal after Spring analogized Boyer to a "snake."  ECF Doc. 9 at 311, 317.  Under Ohio law, "[t]he prosecution is entitled to significant latitude in closing remarks."  *State v. Diar*, 120 Ohio St. 3d 460, 473 (Ohio 2008).  That latitude that persists in rebuttal.  *State v. Powell*, 132 Ohio St. 3d 233, 265 (Ohio 2012).  And Ohio courts have held that prosecutorial misconduct does not occur when the state uses defense counsel's analogy against him.  *See Diar*, 120 Ohio St. 3d at 488 ("The prosecutor could properly respond to defense arguments analogizing Diar's case to a movie."); *State v. Revere*, No. 17039, 1998 Ohio App. LEXIS 6134, at *5 (Ohio App. Ct. Dec. 11, 1998) (unreported) (holding that the prosecutor's reference to the Mafia in rebuttal was not prosecutorial misconduct).

The Ohio Court of Appeals also could reasonably conclude that the state's comment that Spring could have called witnesses to testify about the pills if he thought it was so important was not prosecutorial misconduct.  Fair-minded jurists could disagree on the correctness of that determination, given that the state made that remark in rebuttal after defense counsel implied that there was doubt as to Boyer's motives for coming over to Spring's house and Spring's pills were found outside and never sent to the lab.  ECF Doc. 9 at 310-11.  Ohio courts have held comments on a defendant's failure to call witnesses or present evidence he claims would have been helpful are not improper.  *State v. Lenoir*, 2008-Ohio-1984, ¶35 (Ohio Ct. App. 2008); *see also State v. Wilks*, 154 Ohio St. 3d 359, 392 (Ohio 2018) ("The prosecutor may comment on the failure of the defense to offer evidence in support of its case."); *State v. McKnight*, 107 Ohio St. 3d 101, 143 (Ohio 2005) (same).

Moreover, fair-minded jurists could disagree on the correctness of the Ohio Court of Appeals' alternative determination that Spring suffered no prejudice.  The state court could reasonably determine that the evidence against Spring was – as the court described it –

18

"overwhelming." ECF Doc. 8-1 at 69.  This is especially true, given: (1) Sergeant Rath's,

Sergeant Grindle's, Detective Dave Wojta's, and Sheriff Abdalla's testimony that Spring

admitted he stepped outside his front door and shot Boyer in the head "to make sure he was

dead;" (2) Spring's recorded interview, in which he admitted to shooting Boyer in the abdomen

and then in the head because he did not want to see Boyer suffer; (3) expert testimony that Boyer

was likely alive when he was shot in the head; (4) expert testimony that Boyer had two entry

wounds – one in his chest and one in the back of his head; and (5) Spring's admission – along

with corroborating physical evidence – that he placed a knife in Boyer's hands and attempted to

clean his blood before calling 911.  ECF Doc. 8-1 at 60; ECF Doc. 9 at 119, 126, 139, 163, 181-

82, 213, 241-42, 245-46, 254-55, 280-81.  The state court's conclusion that Spring was not

prejudiced by counsel's failure to object to the prosecutor's closing remarks – either because the

remarks were not improper or because the evidence against him was overwhelming – was,

therefore, not so lacking in justification that it was beyond any possibility for fair-minded

disagreement.  *Harrington*, 562 U.S. at 102-03.

### 6. Witness Testimony

The Ohio Court of Appeals' denial of Spring's Ground One claim – as to his third

ineffective-assistance argument – too was neither contrary nor an unreasonable application of

*Strickland*.  28 U.S.C. § 2254(d).  Applying the *Strickland* standard, the Ohio Court of Appeals

reasonably determined that Sheriff Abdalla's testimony was not objectionable, and Spring

suffered no prejudice due to trial counsel's failure to object to Sheriff Abdalla's and Special

Agent Lulla's testimony.  ECF Doc. 8-1 at 70-72.  The state court's determination that Sheriff

Abdalla's testimony was not improper – and therefore admissible – and that Special Agent Lulla

likely would have been deemed an expert witness had counsel objected are determinations of

state law that are binding on this court.  *Garcia v. Burt*, No. 17-1951, 2018 U.S. App. LEXIS

37314, at *13-14 (6th Cir. Feb. 5, 2018) (unreported); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  The state court's conclusion that counsel was not deficient for not objecting to Sheriff Abdalla's testimony and that no prejudice resulted from Special Agent Lulla's testimony because he would have been an expert necessarily follow.  *Garcia*, No. 17-1951, 2018 U.S. App. LEXIS 37314, at *14.  Moreover, as discussed above, fair-minded jurists could disagree on whether there was overwhelming evidence of Spring's guilt.  The state court's conclusion that counsel was not ineffective for not objecting to Sheriff Abdalla's and Special Lulla's testimony was therefore not so lacking in justification so as to be beyond any possibility for fair-minded disagreement.  *Harrington*, 562 U.S. at 103.

### 7.    Ground One Summary

Because Spring has not shown that the Ohio Court of Appeals unreasonably determined that he failed to meet the requirements of *Strickland*, I recommend that Spring's Ground One claim be DENIED as meritless.

### B.    Ground Two: Ineffective Assistance of Appellate Counsel

In his Ground Two claim, Spring asserts that appellate counsel was ineffective for not raising an ineffective-assistance argument based on trial counsel's failure to investigate the pills found by Boyer's body.  ECF Doc. 1 at 7.

Warden Gray responds that Spring's Ground Two claim is procedurally defaulted because he failed to fairly present the claim to the Ohio Court of Appeals through a timely Ohio App. R. 26(B) application and he has not demonstrated cause or prejudice to excuse his procedural default.  ECF Doc. 8 at 15-17.

In his traverse, Spring asserts that the delay in filing his Rule 26(B) application was for reasons outside his control, though he does not elaborate as to what those reasons were.  ECF

Doc. 25 at 2.  He argues that he can overcome his procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012).  ECF Doc. 25 at 4-5.  And, in connection with the new claims raised in his traverse (discussed separately in Section C below), that he can excuse his procedural default via actual innocence.  ECF Doc. 25 at 7.

### 1.  Procedural Default

Procedural default is "a critical failure to comply with state procedural law," *Trest v. Cain*, 522 U.S. 87, 89 (1997), resulting in a bar to federal habeas review unless the petitioner makes the requisite showing, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when: (1) the state courts didn't review the petitioner's claim on the merits because he didn't comply with some state procedural rule; or (2) he failed to fairly present the claim to the state courts while state court remedies were still available.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  The former occurs when: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court actually enforced the rule; (3) the rule constituted an "adequate and independent state ground;" and (4) the petitioner cannot overcome his procedural default through cause and prejudice. *Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001).

### 2.  Analysis

Spring's Ground Two claim is procedurally defaulted because the Ohio Court of Appeals applied a state procedural rule to preclude merits review of the claim.  *Williams*, 460 F.3d at 806; ECF Doc. 8-1 at 108-09.  Spring raised his Ground Two claim in his Ohio App. R. 26(B) application to reopen.  ECF Doc. 8-1 at 128.  To be timely, such applications must be filed within 90 days from journalization of the challenged appellate judgment, unless there is a showing of good cause for delayed filing.  Ohio App. R. 26(B)(1).  And the application must include any parts of the record available to the applicant upon which his motion relies.  Ohio App. R. 26(B)(2)(e).

The appellate judgment was journalized on March 6, 2017, such that Spring's Rule 26(B) application had to be filed no later than June 5, 2017.  Ohio App. R. 26(B)(1); ECF Doc. 8-1 at 58. Spring filed his application on June 6, 2017, resulting in the failure to comply with an applicable state procedural rule.  *Coleman*, 268 F.3d at 427; ECF Doc. 8-1 at 108-09; *see* Docket for Ohio App. Ct., 7th Dist. Case No. 15JE19.  He likewise failed to attach portions of the transcript upon which his application relied.  ECF Doc. 8-1 at 109.  Although Spring claimed that transcripts were unavailable because counsel never furnished them, counsel was not required to do so.  *State v. Quinn*, 2011-Ohio-3717, P6 (Ohio Ct. App. 2011); *State v. Marcum*, 2002-Ohio-21, 2002 Ohio App. LEXIS 86, at *4 (Ohio Ct. App. Jan. 14, 2002).  And at least one Ohio court has required that applicants show what efforts they made to obtain transcripts.  *State v. Sweeney*, 723 N.E.2d 655, 657 (Ohio Ct. App. 1999).

The state court actually enforced the both rules.  *Coleman*, 268 F.3d at 427; ECF Doc. 8-1 at 108-09.  And Rule 26(B)'s timeliness and transcript requirements are adequate and independent state law grounds for denying relief.  *Taylor v. Buchanan*, No. 20-3120, 2020 U.S. App. LEXIS 20439, at *9 (6th Cir. June 30, 2020) (unreported); *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002); *Coleman*, 268F.3d at 427.  Therefore, Spring's Ground Two claim is procedurally defaulted.  *See Williams*, 460 F.3d at 806.

Spring also cannot demonstrate cause and prejudice to overcome his procedural default.  *Coleman*, 268F.3d at 427.  Spring argued to the Ohio Court of Appeals that the one-day delay wasn't his fault because he delivered the application for mailing on June 1, 2017.  ECF Doc. 8-1 at 111.  But Ohio doesn't have a prison mailbox rule, so pleadings filed by prisoners are deemed filed on the day they are filed with the court.  *State ex rel. Tyler v. Alexander*, 52 Ohio St. 3d 84, 84-85 (Ohio 1990); *State v. Williams*, 811 N.E.2d 561, 564 (Ohio Ct. App. 2004); *see also Stewart v. Gillie*, 2017-Ohio-4088, 2017 Ohio App. LEXIS 3594, at *2 (Ohio Ct. App. Aug. 22, 2017) (unreported) (holding, on reconsideration, that Stewart's application to reopen his appeal was untimely because the prison

mailbox rule is not applicable in Ohio). Although Spring had no control over how long it would take for his application to be delivered to the state court, he knew he had until June 5, 2017 (a Monday) yet waited until June 1, 2017 (a Thursday) – almost the last possible day – to mail the application. Thus, any filing delay was fairly attributable to Spring, such that he cannot establish cause. *See Smith v. Jenkins*, 609 F. App'x 285, 290 (6th Cir. 2015) ("The 'cause' must be external to [the petitioner] and not fairly attributable to him."). And failure to establish cause makes it unnecessary to consider prejudice. *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007).

To the extent Spring relies on *Martinez* to excuse the procedural default of his Ground Two claim, he has not succeeded. In *Martinez*, the Supreme Court held that when state law only allows ineffective-assistance-of-trial-counsel claims to be raised on collateral review, a prisoner may establish "cause" to overcome a default of an ineffective-assistance-of-trial-counsel claim if: (1) the petitioner proceeded pro se in the collateral proceeding in which he should have raised the claim; or (2) the petitioner was counseled, but counsel was ineffective. 566 U.S. at 14. In either case, the petitioner must also demonstrate that his claim has "some merit." *Id.* Spring cannot rely on *Martinez* because the Supreme Court has declined to extend *Martinez* to procedurally defaulted claims of ineffective assistance of *appellate* counsel. *Davila v. Davis*, 137 S. Ct. 2058, 2063, 2065 (2017).

Spring could attempt to overcome his procedural default under the fundamental-miscarriage-of-justice exception. *Coleman*, 501 U.S. at 750. But he would have to show that there is new, reliable evidence establishing that he was actually innocent of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). It means evidence in light of which no reasonable juror could convict the petitioner. *Schlup*, 513 U.S. at 329. Evidence that Boyers stole Spring's pills does not establish that Spring was factually innocent of killing Boyer. Rather, it raises the issue of whether Spring shot

23

Boyers to defend his property – a claim that he was legally innocent of murder.  *See Harvey v. Jones*, 179 F. App'x 294, 299 (6th Cir. 2006) (holding that an actual-innocence argument premised on self-defense is a legal, as opposed to factual, innocence argument).  Thus, because no excuse applies, Spring's Ground Two claim should be dismissed as procedurally defaulted.

### 3.    Merits

Even though Spring's Ground Two claim is procedurally defaulted, the Court may nevertheless choose to consider the claim on the merits under *de novo* review.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (courts can ignore complicated procedural bar issues if the merits are easily resolvable against the petitioner).  Spring's Ground Two claim lacks merit.  Appellate counsel reasonably could have determined that raising a claim of ineffective assistance of trial counsel based on trial counsel's failure to investigate the pills found near Boyer's body would have been meritless.  *See Strickland*, 466 U.S. at 690.  A forensic analysis of the pills may have established that they were Spring's and that Boyer had stolen them, which would have supported Spring's testimony that he rushed Boyer out the door upon discovering that Boyer had rifled through Spring's medication.  ECF Doc. 8-1 at 278-80.  But appellate counsel reasonably could have determined that the outcome of trial would not have changed with the benefit of that evidence because the jury already heard (i) Spring's testimony that Boyer stole his pills, (ii) the evidence that pills were found by Boyer's body, and (iii) trial counsel's closing argument that the pills found belonged to Boyers and nevertheless chose not to credit Spring's version of events.  ECF Doc. 8-1 at 278-80, 296-97, 311.  And Spring can point to no legal principle that condones killing someone because you think he might have stolen your property.  Thus, even if Spring could show that his appellate counsel should have asserted a claim about trial counsel's failure to investigate Spring's pill bottle, and even if such an investigation would have shown the pills in

the bottle were Springs's, Spring cannot show prejudice because having one's pills stolen does not excuse killing the thief.

### 4.      Ground Two Summary

Because the Ohio Court of Appeals determined that Spring's failure to comply with a state procedural rule precluded consideration of his claim that appellate counsel was ineffective for not investigating the pills found by Boyer's body, I recommend that his Ground Two claim be DISMISSED as procedurally defaulted.  Should the Court prefer to address Spring's Ground Two claim on the merits, the claim should be dismissed for lack of merit.

### C.      Ground Three: Trial Court Error

### 1.      Parties' Arguments

In his traverse, Spring purports to raise a Ground Three claim that the trial court violated his due process rights by denying his petition for post-conviction relief, when Spring presented evidence that trial counsel was ineffective for not investigating Spring's front door, bullets found at the scene of the shooting, and pills found by Boyer's body.  ECF Doc. 25 at 3-4.  He contends that he was prevented from fully exhausting these grounds because: (i) of his pro se status; (ii) of a prison transfer; (iii) he never received a time-stamped copy of the state appellate decision; and (iv) of prison COVID-19 lockdown measures.  ECF Doc. 25 at 4-6.  He also asserts that the Ohio Court of Appeals improperly invoked res judicata, that he can overcome his procedural default, and that Brundage's forensic report established that he was actually innocent.  ECF Doc. 25 at 4-5, 7-10.

Warden Gray responds that Spring's Ground Three claim is not properly before this court because: (i) it was raised for the first time in his traverse and in any event is non-cognizable because he challenges the propriety of his post-conviction proceedings; (ii) Spring cannot

overcome his procedural default; and (iii) his actual innocence claim insufficiently relates to legal innocence.  ECF Doc. 27 at 2-3.

### 2.    Analysis

I agree with Warden Gray's argument that Spring's Ground Three claim is not properly before the Court.  It bears noting that the court previously granted Spring leave to amend his § 2254 petition so that he could add to his Ground Two claim an argument that *appellate* counsel was ineffective for not raising a claim that trial counsel was ineffective for not forensically testing the bullets recovered from the scene of the offense.  ECF Doc. 13.  Spring was required to raise the claim in an amended petition by January 26, 2021.  ECF Doc. 14; ECF Doc. 17.  Spring never did, and he did not raise the claim – or his proposed Ground Three claim – in his belated amended § 2254 petition.  ECF Doc. 26.  Because Spring raises his Ground Three claim for the first time in his traverse, it is not properly before this court and I recommend that it be dismissed on that basis.  *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

Even if the Court were to consider Spring's Ground Three claim, I would recommend that it be dismissed.  Spring's Ground Three claim is non-cognizable to the extent he contests the trial court's summary dismissal of the claim in his multiple post-conviction petitions.  *Orange v. Lindamood*, No. 4:12-cv-71, 2015 U.S. Dist. LEXIS 124574, at *6 (E.D. Tenn. Sept. 17, 2015) (A claim "that the trial court erred in summarily dismissing his post-conviction petition is not cognizable on federal habeas [review].").  And issues of default or cognizability aside, the claim is meritless.  Only one bullet was recovered from the scene of the offense: the one retrieved from Boyer's chest during his autopsy.  ECF Doc. 9 at 94-95, 200, 223.  Brundage determined that bullet contained paint, which could have established that at least one of the bullets was fired through Spring's door.  ECF Doc. 24 at 25-26.  But the fatal wound came from the unrecovered bullet that struck Boyer in the head.  ECF Doc. 9 at 254-55.  The bullet Spring admitted to

shooting after he'd come "outside … to make sure he was dead."[4]  *See* ECF Doc. 8-1 at 59-60;
ECF Doc. 9 at 119, 121, 139.  Thus. Spring cannot establish prejudice on account of trial
counsel's alleged failure to investigate the door or the bullet or on account of his appellate
counsel's handling of that issue.  *See Strickland*, 466 U.S. at 690.  And evidence that Boyer stole
Spring's pills, as discussed above, likely would not have resulted in acquittal.

### 3. Ground Three Summary

Because Spring raised his Ground Three claim for the first time in his traverse, I
recommend that his Ground Three claim be DISMISSED.  Alternatively, the Ground Three
claim can be disposed of on the merits.

## III. Certificate of Appealability

### A. Legal Standard

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts,
28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of
appealability ("COA") when it enters a final order adverse to the applicant."  Rule 11(a), 28
U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a
certificate of appealability "state the specific issue or issues that satisfy the showing required by
§ 2253 (c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or
deny the certificate of appealability at the time of its final adverse order, a recommendation
regarding the COA issue is included here.

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a COA for an issue raised in a
§2254 habeas petition only if the petitioner has made a substantial showing of the denial of a
federal constitutional right.  *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020).  A

---

[4] Spring's effort to distance himself from this admission is unavailing.  It is undisputed that the admission
was in the trial record as was Spring's later recantation.  The jury could (and apparently did) reasonably
believe the initial admission, not Spring's later version.

petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Buck v. Davis,* 137 S. Ct. 759, 773 (2017) (quotation marks omitted); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack,* 529 U.S. at 484.

**B.  Analysis**

If the Court accepts my recommendations, Spring will not be able to show that the Court's rulings on his claims are debatable among jurists of reason.  Spring's Ground One claim is meritless.  His Ground Two claim is procedurally defaulted and meritless.  And his Ground Three claim is not properly before the Court, non-cognizable, and meritless.  Because jurists of reason would not find debatable that habeas relief is not available for any of the claims raised in Spring's petition, I recommend that no certificate of appealability issue in this case.

**IV.  Recommendation**

Because all of Spring's claims are non-cognizable, procedurally defaulted, and/or meritless, I recommend that all of Spring's claims be DISMISSED and that his petition for writ of habeas corpus be DENIED.  I further recommend that Spring not be granted a certificate of appealability.

Dated: June 22, 2021

Thomas M. Parker
United States Magistrate Judge

28

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).