## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY M. SPRING, SR., | ) | CASE NO. 4:18-cv-2920 |
| | ) | |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| WARDEN BRANDESHAWN HARRIS, | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

On June 22, 2021, Magistrate Judge Thomas M. Parker issued a Report and Recommendation ("R&R") recommending that the Court deny the petition for writ of habeas corpus filed by pro se petitioner Jeffrey Spring ("Spring" or "petitioner") pursuant to 28 U.S.C. § 2254. (Doc. No. 29.) Spring sought and received an extension of time to file his objections to the R&R (Doc. No. 31), and Spring subsequently timely file his objections pursuant to Fed. R. Civ. P. 72(b)(2) (Doc. No. 33). Respondent has not opposed Spring's objections. Also before the Court is Spring's motion for appointment of counsel. (Doc. No. 32.)

For the reasons that follow, Spring's objections to the R&R are overruled and the petition is denied and dismissed. Spring's motion for appointment of counsel is denied.

## I.     Legal Standard of Review

### A.     28 U.S.C. § 636(b)(1)(C)

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at

*1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party."); Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). After review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### B.    AEDPA

Although the Court must review *de novo* any matter properly objected to, in the habeas context, it must do so under the deferential standard of the Antiterrorism and Death Penalty Act of 1996 ("AEDPA.") Under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

2

As to the first prong,

> [A] decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." [citation omitted]. . . . [A]n "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." [citation omitted]. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." [citation omitted].

*Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).

With respect to the second prong, federal courts must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)).

Under AEDPA's deferential habeas review standard, the question before the Court on *de novo* review "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams,* 529 U.S. at 410). In order to obtain habeas corpus relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

This standard is difficult to meet "because it was meant to be." *Id.* "[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).

## II.    Discussion

### A.    The R&R

The R&R sets forth in detail the procedural history of this case, including Spring's state court conviction for murder of Stephen Boyer ("Boyer"), with a firearm specification, and for tampering with evidence (Doc. No. 29 at 2–5[1]); direct appeal (*id.* at 5–8); application to reopen his appeal, over which the Ohio Supreme Court declined to exercise jurisdiction (*id.* at 8–9); and six petitions for post-conviction relief, which were denied by the trial court and affirmed by the Ohio Court of Appeals (Spring did not pursue further review before the Ohio Supreme Court) (*id.* at 10–13). In his objections, Spring does not challenge any of these procedural descriptions in the R&R, and they are adopted and incorporated herein.

Spring's habeas petition raises two grounds for relief:

**Ground One**: Trial counsel was ineffective for failing to: (1) file a pretrial motion to suppress Spring's statements to police; (2) object to prosecutorial misconduct during closing arguments; and (3) object to witness opinion testimony.

**Ground Two**: Appellate counsel was ineffective for not raising trial counsel's failure to investigate pills found by Boyer's body.

(*Id.* at 1 (record citations omitted).)

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court despite a different directive in the Initial Standing Order for this case.

4

The R&R recommends that Ground One be denied as without merit because "Spring has not shown that the Ohio Court of Appeals unreasonably determined that he failed to meet the requirements of *Strickland*." (*Id*. at 20.) With respect to Ground Two, the R&R recommends it be dismissed as procedurally defaulted because the Ohio Court of Appeals determined that Spring's failure to comply with a state procedural rule precluded consideration of his claim that appellate counsel was ineffective for not raising trial counsel's failure to investigate pills found by the decedent's body and, alternatively, that Ground Two be dismissed on the merits. (*Id*. at 25.)

Although not raised in the petition, Spring purports to raise a third ground for relief in his traverse—that the trial court violated his due process rights by denying his petition for post-conviction relief when Spring presented evidence that trial counsel was ineffective for not investigating his front door, bullets found at the scene of the shooting, and pills found by the decedent's body. (*Id*. at 25.) The R&R recommends that ground three be dismissed as not properly before the Court and, alternatively, on the merits. (*Id*. at 27.)

Lastly, should the Court accept the R&R that the petition be dismissed and denied, the R&R also recommends that Spring not be granted a certificate of appealability. (*Id*. at 28.)

**B.     Spring's Objections**

**1.     Improper "objections"**

Spring begins his objections by listing Grounds One and Two of his habeas petition in their entirety. (*See* Doc. No. 33 at 2.) To the extent that Spring is generally objecting to the entirety of the R&R with respect to Grounds One and Two, that objection is disregarded. General objections do not satisfy the specific objection requirement of the statute. "Overly general objections do not

satisfy the objection requirement. . . . 'The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.'" *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) (quoting *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995)) *abrogated in on other grounds by Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 28 798 (2007).

In addition, Spring "objects" to a laundry list of facts which he characterizes as "unreasonable determination of facts in light of the evidence presented in the state courts." (Doc. No. 33 at 6–8.)

> This section of the objections will address the unreasonable determination of the facts in light of the evidence presented in the state courts.
>
> 1. This was a rushed trial process, the jury was picked, we had the trial and I [was] sentenced all in the same day.
>
> 2. My court appointed attorney did not show up for scheduled pre-trial hearing on 6-22-15 Ineffective Assistance of Counsel hear after [sic] (IEAC)
>
> 3. Prosecutor played only the portion of an interview with me that the prosecutor wanted the jury to see rather than the entire interview, my trial attorney failed to object to this. (IEAC) Trial transcript Page ID# 458
>
> 4. The sheriff lied at trial about whether or not victims [sic] finger prints or DNA were on the knife (PageID#: 751) Counsel failed to object to or challenge this misinformation. (IEAC)
>
> 5. The door was not used as evidence, this would have shown where the bullets passed through and that the door was closed at the time. (IEAC)
>
> 6. The evidence does not show that the victim was shot in the abdomen, it shows that he was shot in the upper chest, (PageID #:756 lines 23-25)
>
> 7. BCI investigator testifies that the body was never moved, the statement about a 90 degree shot required to hit victim was a false statement made up by the prosecution. (PageID#:753-754)
>
> 8. Trial counsel failed to object at any point in the trial proceedings.

6

9. Evidence as shown on (PageID#'s 763-764) that there was no evidence that the victim was shot at close range, no fouling, no stippling or other evidence of close range wounds.

10. Some wounds on the victim were from his forcible removal from the home prior to the shooting.

11. Prosecutors [sic] inflammatory remarks at trial included statements that Mr. Spring was a drunk, a murderer and a snake. These statements were used to inflame the jury and improperly play on the jury's emotions.

12. Spring told jury that he fired through the door after the verdict, PageID# 634

To the extent that Spring is contending in this "objection" that the evidence does not support his conviction and counsel was ineffective for reasons not contained in his habeas petition and not before the magistrate judge, Spring cannot raise new claims or arguments in an objection that were not raised before the magistrate judge. *Pryor v. Erdos*, No. 5:20-cv-2863, 2021 WL 4245038, at *8 (N.D. Ohio Sept. 17, 2021) ("It is well-established that a habeas petitioner cannot raise new claims or arguments in an objection that were not presented to the Magistrate Judge.") (collecting cases). Such "objections" are improper and are overruled.

To the extent that Spring's "objection" list simply repeats without elaboration issues raised in his habeas petition and addressed by the magistrate judge, he has not raised a proper objection under the statute or the rule. Spring's mere identification of these issues on a list may indicate disagreement and/or disappointment with the magistrate judge's recommendation but does not constitute a proper objection under the statute or rules. *Aldrich,* 327 F. Supp. 2d at 747 ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."); *Enyart v. Coleman*, 29 F. Supp. 3d 1059, 1068 (N.D. Ohio 2014) (A

7

party disappointed with the magistrate judge's recommendation has a "'duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'") (quoting *Mira v. Marshall,* 806 F.2d 636, 637 (6th Cir. 1986)).

### 2. Ground One[2]

#### a. *Ineffective assistance of trial counsel— failing to move to suppress Miranda-defective statements*

Boyer was shot and killed at Spring's home. Spring called 911. The police arrived and Spring was provided with the *Miranda* warnings at the scene, after which Spring admitted that he shot and killed Boyer and gave other statements to the police regarding the events that transpired. Approximately ten hours later, while in the custody of the sheriff, Spring was again provided with the *Miranda* warnings and indicated that he understood his rights and wished to waive them, after which he admitted to the sheriff that he shot Boyer. *State v. Spring*, 85 N.E.3d 1080, 1083–84 (Ohio Ct. App. 2017). Spring claims that he was impaired by drugs and alcohol when he made these statements to the police and sheriff and, therefore, could not give a valid *Miranda* waiver. Trial counsel did not move to suppress Spring's statements.

Spring filed a direct appeal on the issue of whether trial counsel was ineffective because counsel did not seek to suppress his confession to the police that he shot the victim. Spring did not dispute on appeal that he was provided the *Miranda* warnings, but rather claims that "he could not have validly waived those rights because he was intoxicated." *Id*. at 1085. Spring contends that

---

[2] Spring does not assert any specific objections with respect to his claims in Ground One that trial counsel was ineffective for failing to object to prosecutorial misconduct during closing arguments or for failing to object to witness opinion testimony. Accordingly, the Court adopts the magistrate judge's report and recommendation with respect to those issues in Ground One of Spring's habeas petition.

both the state court on direct appeal and the magistrate judge on habeas review erred in ruling that

his trial counsel was not ineffective for failing to move to suppress his confessions because they

relied upon (i) case law suggesting that impairments from drugs, alcohol, and similar substances

could not be considered to negatively impact his ability to waive his *Miranda* rights, and (ii) the

outcome of a hypothetical suppression hearing. (*See* Doc. No. 33 at 2–3.)

### b.   *Miranda v. Arizona*

In *Miranda v. Arizona*, the Supreme Court held that under the Fifth Amendment of the

United States Constitution, a person taken into custody or otherwise deprived of their freedom

must be advised of certain rights prior to questioning, including their right to remain silent. *See*

*Miranda v. Arizona*, 384 U.S. 436, 444, 471–78, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Statements made by a defendant without being advised of his rights and a valid waiver cannot be

used against the defendant in a criminal trial. *Id.* at 479. Whether a defendant's waiver of his

*Miranda* rights is valid depends upon the totality of the circumstances. Relevant here, the

"Supreme Court has never said that impairments from drugs, alcohol, or other similar substances

can negatively impact a suspect's waiver of his *Miranda* rights." *Treesh v. Bagley*, 612 F.3d 424,

434 (6th Cir. 2010) (internal quotation marks and citation omitted). And under Ohio law, "[t]he

presence of alcohol will not, by itself, make a statement *per se* inadmissible." *State v. Stewart*, 598

N.E.2d 1275, 1279 (Ohio Ct. App. 1991) (internal quotation marks and citation omitted).

### c.   *Strickland v. Washington*

Under the constitution, "the proper standard for attorney performance is that of reasonably

effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 80 L. Ed. 2d

674 (1984) (citation omitted). A claim for ineffective assistance of counsel has two components. First, "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Second, "defendant must show that the deficient performance prejudiced the defense." *Id*. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

> On habeas review of a claim for ineffective assistance of counsel:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.' *Williams*,[529 U.S. at 410,*supra,* at 410]. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 562 U.S. at 101.

### d.   Analysis

Because Spring has raised a specific objection to the R&R on this issue, the Court will conduct a *de novo* review. Spring maintains that alcohol, hydrocodone, oxycodone, valium, and Zanaflex, were all present in his system at the time he was provided with the *Miranda* warnings and it is the "combination of all of these powerful drugs with the inclusion of a significant amount of alcohol" (Doc. No. 33 at 3) that is at issue, not the effect of a single substance on his ability to reason with respect to the waiver of his *Miranda* rights. Spring argues that, had trial counsel moved for a suppression hearing, "it would very be difficult" (*id*.) to conclude that he was not impaired

and was able to make a free and rational choice not to speak with the police and "highly likely" that those statements would have been suppressed, "having a substantial effect on the outcome of the trial." (*Id*. at 4.) In support, of this argument, Spring cites *State v. Freeman*, No. 95511, 2011 WL 2176168 (Ohio Ct. App. June 2, 2011) for the proposition that an individual may be in an alcohol induced blackout, but still able to perform ordinary functions.[3] (Doc. No. 33 at 3–4.)  Thus, Spring concludes that "[i]t is clear from the evidence presented at trial that the cumulative effect of these drugs rendered [him] unable to make a free and rational choice with regards to making a statement to the police." (*Id*. at 4.)

In analyzing this issue, the Ohio Court of Appeals set out the law concerning ineffective assistance of counsel and the two-prong test of *Strickland*, and concerning *Miranda* warnings, waiver, and the State's burden in the face of a challenge that a confession was involuntary—"the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of the evidence." In order to determine whether a valid *Miranda* waiver occurred, the Court must consider the "totality of the circumstances[.]" *Spring*, 85 N.E.3d at 1085–86 (citations omitted). In his habeas petition, Spring does not claim that the Ohio Court of Appeals erred in articulating the law with respect to *Strickland* or *Miranda*.

---

[33] *State v. Freeman* is inapposite to the Court's analysis. In *Freeman*, the issue of impairment was addressed in the context of a victim's ability to resist or consent to sexual conduct and defendant's knowledge of the victim's impairment. In that case, the victim was young and had consumed marijuana provided to her by the defendant. Based on the evidence in the record, the court of appeals concluded that there was substantial evidence in the record establishing beyond a reasonable doubt that the victim was substantially impaired because she was "zoned out" and "zombie like" and did not grasp the realization of where she was. *Freeman*, 2011 WL 2176168, at *5. Even were Freeman apposite to the Court's analysis, unlike the victim in Freeman, there is no evidence in the record with respect to Spring that he was "zoned out" or "zombie like" or did not grasp the realization of his situation. Rather, the evidence in this case is to the contrary.

The court of appeals then addressed the specific issue of intoxication and its effect on the waiver of *Miranda* rights—"The presence of drugs and/or alcohol does not render a statement inadmissible per se. *** Rather, while their presence should be considered, 'the amount must sufficiently impair the confessor's ability to reason.'" *Id.* at 1086 (citations omitted) (alteration in original). The appellate court went on to consider caselaw wherein defendants had consumed various combinations of drugs and/or alcohol, but their *Miranda* waivers were found to be valid because there was evidence in the record that they understood their rights and were not confused about their rights under *Miranda*. *Id.* at 1086–87 (citing *State v. Fairley*, No. 5-03-41, 2004 WL 1146530 (Ohio Ct. App. May 24, 2004) (defendant was drunk and had used cocaine); *State v. West*, No. 23547, 2010 WL 1632316 (Ohio Ct. App. Apr. 23, 2010) (breathalyzer test produce a result nearly three times the legal limit); *State v. Stanberry*, No. 2002 -L-028, 2003 WL 22427922 (Ohio Ct. App. Oct. 24, 2003) (defendant ingested nine Valiums, three doses of acid, and eight beers but no evidence to suggest defendants' ability to reason was sufficiently impaired so as to invalidate his Miranda waiver)).

Against this background, the court of appeals specifically acknowledged that, although Spring stated that he was "pretty drunk" and had also taken painkillers, Zanaflex, and Valium, both waivers of his *Miranda* rights were valid. With respect to Spring's waiver of his *Miranda* rights at the scene when the police arrived after Spring called 911 to report that he had shot and killed the victim, the court of appeals considered Spring's 911 call in which, although his speech was slurred, Spring was coherent and calm and able to accurately report his name, phone number and address, and the victim's name. The officers at the scene indicated that Spring was calm and

appeared to be able to understand their questions. About ten hours later after Spring's arrest in a videotaped interview, the interviewing officer stated that he was reading Spring his *Miranda* rights for the third time, and Spring corrected the officer that it was the second (not third) time he was being read his rights and, on the videotape, he was not slurring his speech, did not appear intoxicated or suffering from memory loss or confusion, and indicated that he understood the rights he was waiving by making a statement. (*Id.* at 1087.)

Based upon these facts and the pertinent caselaw, the court of appeals found that a motion to suppress Spring's statements to the police would have been without merit and not succeeded. Thus, the court of appeals concluded that Spring's counsel was not constitutionally ineffective because counsel is not required to file a meritless motion. *Id.* at 1087–88.

Spring disagrees with the court of appeals' conclusion that, given the applicable law and totality of the circumstances in the instant action, a motion to suppress his statements to the police on the grounds of an invalid *Miranda* waiver due to the mixture of drugs and alcohol he consumed would not have succeeded. But Spring has not established that the state court's application of the law concerning ineffective assistance of counsel or waiver of his *Miranda* rights was contrary to or an unreasonable application of clearly established law. Nor has Spring established that the court of appeals' determination regarding Spring's impairment and ability to waive his *Miranda* rights was unreasonable based upon the record evidence.

While fair-minded jurists may disagree regarding the level of Spring's impairment both at the scene and later at the jail, that disagreement is not the standard for granting habeas relief. *Harrington*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes

13

federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of [the state court's] decision.") (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)). Here, the state court's conclusion that a motion to suppress would have been denied and, therefore, counsel was not ineffective for failing to bring a meritless motion is not so lacking in justification that it was beyond possibility for fair-minded disagreement. *Id.* at 103 (In order to obtain habeas corpus relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."); *Brown v. McKee*, 231 F. App'x 469, 475 (6th Cir. 2007) (failure to bring a meritless suppression motion cannot constitute ineffective assistance) (citation omitted).

Thus, the Court concludes the state court's holding that trial counsel was not ineffective for failing to move to suppress Spring's statements to the police was not an unreasonable application of the *Strickland* standard. *See Harrington*, 562 U.S. at 101. Accordingly, Spring's objection is overruled.

### 3.    Ground Two

In Ground Two, Spring claims that appellate counsel was ineffective for not raising on appeal trial counsel's failure to investigate pills found near the victim's body. The magistrate judge recommended that this ground for habeas relief be dismissed and denied as procedurally defaulted and for lack of merit. (Doc. No. 29 at 20–25.) In his objection, Spring does not specifically address that recommendation. Rather, he generally states that "[a]ll of the Grounds for relief are substantively all related to both Ineffective Assistance of Trial Counsel and Ineffective Assistance

14

of Appellate Counsel and are subject to review under the *Martinez/Trevino* framework as announced in *White v. Warden, Ross Corr. Inst.,* 940 F.3d 270*.*" (Doc. No. 33 at 5.) Spring reasserts the argument in his traverse drawing the Court's attention to *White*, and the *Martinez/Trevino* framework that he contends provides a basis for excusing his procedural default (*see* Doc. No. 25 at 4–10), which the magistrate judge addressed in analyzing Ground Two of the petition. (Doc. No. 29 at 21 ("[Spring] argues that he can overcome his procedural default under *Martinez v. Ryan*[.]")).

To the extent that Spring's generalized statement regarding the magistrate judge's recommendation regarding Ground Two may constitute a proper objection, the Court will conduct a *de novo* review.

### a.  *Procedural default*

Procedural default occurs when a petitioner fails to comply with a state procedural rule and as a result the state did not review a petitioner's claim on the merits, or when a petitioner fails to fairly present the claim to state courts when state court remedies were available. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citations omitted). In the first instance, procedural default occurs when (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state court enforced the rule, (3) the rule constitutes an "adequate and independent state ground" justifying foreclosure of the federal constitutional claim. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). A procedural default may nevertheless be excused if the petitioner has shown cause for violating the state procedural rule and prejudice resulting from the alleged constitutional error. *Id.*

15

Spring's claim that appellate counsel was ineffective for not raising on appeal trial counsel's failure to investigate pills found near the victim's body is procedurally defaulted. Spring raised this claim for ineffective assistance of appellate counsel in his Ohio App. R. 26(B)(1) application to reopen his appeal. (*See* Doc. No. 8-1 at 128 ("**Ground raised on Application for Reopening** - Appellant raised the single ground of counsel being ineffective for failing to test the pills found immediately next to the body. Had the pills been tested, the trial court would have found the pills were the stolen property of the Appellant.").) Under Rule 26(B)(1), applications to reopen appeals must be filed within 90 days from the date the challenged appellate judgment is journalized, unless the applicant makes a showing of good cause:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

*State v. Spring*, 15 JE 0019, 2017 WL 2839160, at *1 (Ohio Ct. App. June 29, 2017) (quoting Rule 26(B)(1)).

In Spring's case, the court of appeals journalized its judgment entry and opinion in Spring's direct appeal on March 6, 2017. (Doc. No. 8-1 at 58.) *See* also *Spring*, 2017 WL 2839160, at *1. Spring's application to reopen was filed on June 6, 2017, one day late. (Doc. No. 8-1 at 179.) *See also Spring*, 2017 WL 2839160, at *1. The court of appeals denied Spring's motion to reopen on two grounds: (1) his application to reopen was untimely under Rule 26(B)(1) and he failed to make a showing of good cause for his untimely filing, and (2) he did not provide the portions of the record upon which he relied as required by App. R. 26(B)(2)(e). *Spring*, 2017 WL 2839160, at *1.

16

The state court enforced its timeliness and procedural rules, each of which is an adequate and independent basis for foreclosing habeas relief. *See Fox v. Gray*, No. 20-3188, 2020 WL 8513904, at *3 (6th Cir. Oct. 16, 2020) (collecting cases), *cert. denied,* 141 S. Ct. 1717, 209 L. Ed. 2d 482 (2021); *Baker v. Bradshaw*, 495 F. App'x 560, 565 (6th Cir. 2012) ("This court has held that violation of the timeliness requirements of an application for reopening an appeal . . . constitute[s an] adequate and independent state ground[] to preclude hearing an untimely claim on the merits.") (citations omitted); *Gooden v. Bradshaw*, No. 5:12-cv-2139, 2014 WL 4245951, at *10 (N.D. Ohio Aug. 25, 2014) ("[T]his Court has found App. R. 26 (B)(2)(e) to be an adequate and independent state ground to foreclose federal review.") (citation omitted).

Spring's procedural default of Ground Two of his habeas petition may be excused if he can establish cause and prejudice, but he has not done so. Spring contends that he deposited his application to reopen with the prison mail room on June 1, 2007, days in advance of the 90-day application deadline. But Ohio has rejected application of the prison mailbox rule to excuse untimely filings and, therefore, it cannot be applied by this Court to find that Spring's application to reopen was timely filed. *See Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (citing cases). Spring does not offer any other reason not attributable to his own actions to establish cause for the untimely filing. With respect to his failure to satisfy the requirements of Rule 26(B)(2)(e), Spring contends that he was unable to provide the portions of the record to support his application to reopen because he never received them from appellate counsel. (*See* Doc. No. 8-1 at 114–15.) But counsel is not required to provide the record and Spring did not indicate any other efforts on his part to obtain the record. *See State v. Marcum*, CA96-03-049, 2002 WL 42894, at *2 (Ohio Ct.

App. Jan. 14, 2002); *see also State v. Sweeney*, 723 N.E.2d 655, 657 (Ohio Ct. App. 1999) ("[R]egarding the particular circumstances of the present case, we note that Sweeney has not said what parts of the transcript he lacked, why he lacked access, what efforts he made to obtain the transcript, or how he was hampered in [timely] filing by the lack of access. Accordingly, Sweeney has given us no reason to even consider whether good cause exists."). Because Spring has not established cause for failing to comply with Ohio's procedural rules, the Court need not consider prejudice.

### b. *Fundamental miscarriage of justice*

Even in the absence of cause and prejudice, a petitioner may be able to overcome a procedural default that would otherwise bar habeas review if the petitioner can establish that failure to review his habeas claim will result in a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). The exception for a fundamental miscarriage of justice has been explicitly tied to a petitioner's ability to demonstrate actual innocence. *Schlup v. Delo,* 513 U.S. 298, 321, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

Spring claims that he is actually innocent of murder and his default should be excused because he was intoxicated by the combination of drugs he ingested and lacked the capacity to understand his conduct and/or to form the required *mens rea* for murder but may be "guilty of a lesser offense with a far less onerous sentence and stigma associated with the [m]urder conviction." (*See* Doc. No. 33 at 4; Doc. No. 25 at 7.)

18

Actual innocence requires a showing of factual innocence, not mere legal insufficiency. *Schlup*, 513 U.S. at 324; *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency[]"). "To succeed on a claim of 'actual innocence,' a petitioner must offer 'new reliable evidence' showing that a 'fundamentally unjust incarceration' has occurred." *Keith v. Voorhies*, No. 1:06-cv-2360, 2009 WL 185765, at *7 (N.D. Ohio Jan. 23, 2009) (citing among authority *House v. Bell,* 547 U.S. 518, 536–37, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)).

Spring's argument that he is actually innocent because intoxication prevented him from understanding his conduct was wrong or forming the *mens rea* required for murder is unavailing. As an initial matter, his alleged intoxication is not new evidence. Spring was aware of his alleged level of intoxication at the time of trial and, indeed, argues that impairment should have been the basis for a motion suppress. Moreover, even if Spring's intoxication were new evidence, it would be insufficient to establish actual innocence.

> [A] habeas petitioner may not show his "actual innocence" under *Schlup* by presenting new evidence that might have led a jury to convict him of a lesser offense. In *Harvey v. Jones*, 179 F. App'x 294, 298 (6th Cir. 2006), the Sixth Circuit found that petitioner could not avail himself of *Schlup*'s actual innocence exception because his challenge was based on allegedly defective jury instructions, not "new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," and that he therefore was claiming, at most, "legal innocence," not "actual innocence." *Harvey* cited approvingly the Tenth Circuit's statement in *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000), that the petitioner in that case did not show actual innocence by admitting to killing his victim but "claim[ing] he is not guilty of first degree murder because he was intoxicated and acted in self defense," as "these arguments go to legal innocence, as opposed to factual innocence." Further, this Court, in *Robinson v. Morrow*, No. 08-cv-00235, 2015 WL 5773422, at *18 (M.D. Tenn. Sept. 30, 2015), cited extensive case authority for the proposition that "a petitioner does not establish

19

actual innocence by asserting that new evidence shows he is guilty only of a lesser degree of homicide."

*Wolfe v. Westbrooks*, No. 3:14-cv-1575, 2019 WL 1242701, at *2 (M.D. Tenn. Mar. 18, 2019).

### c.  *Martinez/Trevino*

Finally, Spring argues that his claim for ineffective assistance of appellate counsel should be considered on the merits under the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) and *Trevino v. Thaler*, 569 U.S. 413, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013) as explained in *White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 273 (6th Cir. 2019). (Doc. No. 33 at 5–6.) But those Supreme Court's decisions address habeas claims for ineffective assistance of *trial* counsel, and the Supreme Court has expressly declined to extend *Martinez* to procedurally defaulted claims for ineffective assistance of *appellate* counsel, which is the basis for Ground Two of Spring's petition. *See Davila v. Davis*, -- U.S. --, 137 S. Ct. 2058, 2065–70, 198 L. Ed. 2d 603 (2017); *see also Young v. Westbrooks*, 702 F. App'x 255, 268 (6th Cir. 2017) (citing *Davila*, 137 S. Ct. at 2062-63 (holding that the *Martinez* exception only applies to excuse ineffective assistance of trial counsel and declining to extend that exception to allow federal courts to consider a different kind of defaulted claim—ineffective assistance of appellate counsel)).

Spring's Second Ground for relief is procedurally defaulted and his objection is overruled.

### 4.  Ground Three

Although Spring raised only two grounds for relief in the petition, he raised a third ground for relief in the traverse. In his purported Ground Three, Spring claims that the trial court deprived him of due process by denying his petitions for post-conviction relief when he presented evidence

20

that trial counsel was ineffective for failing to investigate evidence related to the door at his home, the bullets at the scene, and pills near the victim's body. (Doc. No. 25 at 3–4.) The magistrate judge recommended that Spring's purported Ground Three be dismissed as not properly before the Court (being raised for the first and only time in the traverse), non-cognizable, and without merit. (*See* Doc. No. 29 at 25–27.)

Spring's objection to the magistrate judge's recommendation concerning his purported third ground for relief is difficult to discern and an improper objection that need not be reviewed *de novo* by this Court. *See United States v. West*, No. 2:16-cr-117, 2017 WL 1397420, at *1 (E.D. Tenn. Apr. 18, 2017) ("Poorly drafted objections, general objections, or objections that require a judge's interpretation are ineffective and insufficient to preserve the right of appeal.") (citation omitted), *aff'd*, 789 F. App'x 520 (6th Cir. 2019). To the extent that Spring has asserted a proper objection, his objection is overruled upon *de novo* review.

By way of background, before the traverse was filed on May 24, 2021, Spring sought to amend his petition for habeas relief to amend Ground Two to include a claim that appellate counsel was ineffective for failing to raise on appeal that trial counsel was ineffective for failing investigate and forensically test the recovered bullets for metal, paint, or primer that would support Spring's contention that he shot through the door of his home unaware that the victim was on the other side. At the time Spring sought to amend his petition, Spring's petitions for post-conviction relief were still pending. The magistrate judge granted Spring's motion to amend the petition and stayed the case to permit Spring to exhaust these claims. (*See* Doc. No. 13.) Spring was required to file his amended petition by January 26, 2021, but he did not do so. (Doc. No. 17.) Spring filed a belated

21

amended petition on June 1, 2021. (Doc. No. 26.) But the amended petition did not amend Ground Two or add the third ground for relief advanced in his traverse filed earlier on May 24, 2021. (*See id*.)

Because Spring's purported third ground for relief was first presented in his traverse and not in his habeas petition (or his amended petition), it is not properly before the Court. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it.") (collecting cases). "It is axiomatic that a habeas petitioner may not add a new claim as part of a traverse." *Williams v. Forshey*, No. 2:20-cv-5460, 2021 WL 2102504, at *2 (S.D. Ohio May 25, 2021) (citing *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011) (citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005))). Accordingly, even if Spring raised a proper objection to his purported Ground Three, his objection is overruled.

## III.  Conclusion

To the extent that Spring did not object to the magistrate judge's report and recommendation, Spring waived his right to a *de novo* review. With respect to the issues to which Spring filed a proper objection, the Court conducted a *de novo* review. Spring's objections are overruled and the recommendations of the R&R are adopted. Accordingly, Spring's petition is denied and dismissed in its entirety. Spring's motion for appointment of counsel (Doc. No. 32) is denied.

The magistrate judge recommended that, because all of Spring's claims are non-cognizable, procedurally defaulted, and/or without merit, Spring not be granted a certificate of appealability. Spring did not object to this recommendation. The Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. §§ 1915(a)(3), 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: March 23, 2022

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**